```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division

NABIL J. ASTERBADI,            )
                               )
        Plaintiff,             )
                               )
        v.                     )     CIVIL ACTION:  1:04CV286(JCC)
                               )
EARL F. LEITESS, ET AL.,       )
                               )
        Defendants.            )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff's Motion to Reject the Magistrate Judge's Report and Recommendation.

On March 1, 2005, the Court granted Summary Judgment in favor of Defendants on Plaintiff Nabil Asterbadi's claim that Defendants committed a fraud on the Court in connection with this Court's 1993 default judgment against Asterbadi.  Defendants filed a motion for Rule 11 sanctions on March 14, 2005.  The Magistrate Judge subsequently recommended that Defendants' motion be granted and that the Court impose sanctions against Plaintiff's counsel in the amount of $181,897.41 as reimbursement for attorneys' fees and $14,747.26 in litigation related expenses.

For the following reasons, the Court will grant Plaintiff's Motion, will reject the Report and Recommendation, and will not impose Rule 11 sanctions.

## I.  Background

In 1991, Washington Capital Aviation & Leasing, Inc. ("WCAL"), a corporation of which Plaintiff Nabil J. Asterbadi was the sole shareholder, purchased a Westwind II jet aircraft with an approximately $2.2 million loan provided by Defendant CIT Group/Equipment Financing, Inc. ("CIT").  WCAL granted CIT a security interest in the aircraft and Plaintiff Asterbadi gave CIT a personal guaranty for the loan.

WCAL filed for bankruptcy in early 1993.  Defendant Earl F. Leitess represented CIT as a creditor in the bankruptcy.

On July 7, 1993, CIT filed a "Verified Complaint for Money Owed" against Asterbadi (the "1993 Complaint"), styled *The CIT Group/Equip. Fin., Inc. v. Asterbadi*, No. 93CV857A, to collect on the guaranty.  The 1993 Complaint was prepared by CIT's counsel in Alexandria, Virginia, Christopher Moffitt and Randolph Knepper, a litigator at Leitess' then-law firm, Levin & Gann, P.C.  Moffitt executed and filed the 1993 Complaint. Asterbadi was served with the 1993 Complaint during July 1993.

The aircraft was sold on or about July 20, 1993.[1]  In the instant suit, Asterbadi claimed that Leitess intentionally

---

[1] Though CIT never produced an accounting of the sale proceeds, CIT maintains that it received gross proceeds of $1,825,000.00 from the sale of the aircraft, and incurred sale-related expenses of $125,672.04, leaving net proceeds in the amount of $1,699,327.96.

hid the sale of the aircraft from Asterbadi and the Court in order to obtain an inflated default judgment.

Asterbadi did not respond to the 1993 Complaint and did not request that any lawyer file a response on his behalf. On August 30, 1993, CIT filed a "Motion for Default and Judgment by Default" in the action against Asterbadi. Moffitt drafted and executed the Motion and the "Declaration in Support of Default Judgment." On October 4, 1993, the Court entered a default judgment for CIT against Asterbadi in the amount of $2,286,009.97 and attorneys' fees of $347,742.50.

CIT did not attempt to execute on the judgment at that time and instead entered into a forbearance agreement with Asterbadi on January 4, 1994. The forbearance agreement reduced the principal amount of the 1993 Judgment from $2,286,009.97 to $586,682.01, and reduced the interest and attorneys' fees. Under the agreement, Asterbadi was also given the opportunity to extinguish his debt to CIT by making aggregate principal payments of $250,000.00 on or before July 8, 1996.

That same day, Leitess sent a letter to Joseph Manson,[2] with copies to Moffitt and CIT's Charles Snodgrass, requesting that Moffitt credit the judgment with the net proceeds of the sale of the aircraft. On April 11, 1994, Moffitt, on behalf of

---

[2] Manson was the bankruptcy attorney for WCAL who assisted Asterbadi in connection with CIT's efforts to resolve the guaranty obligation.

3

CIT, filed a "Notice of Partial Satisfaction", reducing the principal to $586,682.01 and reducing attorneys' fees to $88,002.30.

When Asterbadi failed to make payments under the forbearance agreement, CIT attempted to collect on the default judgment by enrolling judgments in New Jersey, Maryland, and the District of Columbia at various times in 1995 and 2003.

On March 17, 2004, Asterbadi filed suit against CIT, Leitess, and Leitess's new law firm, Leitess, Leitess & Freiberg, P.C. Asterbadi claimed that the Defendants committed a fraud on the Court by causing the full default judgment to be filed in the 1993 case when CIT and Leitess knew that the airplane had been sold and that substantial proceeds had been received. Asterbadi contended that the Notice of Partial Satisfaction continued the fraud perpetrated by CIT and Leitess by continuing the charade that the judgment was appropriate when entered, and that the sums credited had been paid on the judgment.

Asterbadi further claimed that CIT used the judgment as leverage with Manson in getting Asterbadi to consent to the forbearance agreement. Moreover, he claimed that the provision in the forbearance agreement stating that the judgment was "valid and enforceable," effectively prevented Asterbadi from challenging CIT's alleged lack of compliance with the Virginia Uniform Commercial Code when it sold the aircraft.

4

Asterbadi claimed that neither he nor Manson knew that the aircraft had been sold at the time Asterbadi entered into the forbearance agreement, let alone that it had been sold in July 1993, before the Court entered the default judgment. Leitess testified that he did not learn about the details regarding the sale of the aircraft until December 30, 1993, during a phone conversation with Snodgrass.

On March 1, 2005, the Court granted summary judgment in favor of Defendants. The default judgment was not inequitable because the record demonstrated that Asterbadi was aware of and accepted the amount of the credit at the time he entered into the forbearance agreement. Based in large part on Asterbadi's own deposition testimony, the Court found that at the time the parties executed the forbearance agreement, Asterbadi was aware that he was being awarded a $1,699,327.96 credit for the sale of the aircraft.[3] Asterbadi's deposition testimony and the undisputed fact that Moffitt filed a notice of partial

---

[3] At his deposition, Asterbadi testified:

Q. So the difference represented, at least purported to represent, some type of credit for the airplane. Correct?
A. Yes.
Q. And you knew that in January 1994.
A. I didn't know whether they sold it or kept it.
Q. Right, I understand that.
A. All I knew is they gave credit.
Q. Okay. So as of early January 1994, you were aware that CIT was giving you credit to reflect the collateral, some disposition of the collateral.
A. Some disposition of the collateral.

(Asterbadi Tr. at 154).

satisfaction with the Court in April, 2004 to reflect the proceeds of the sale were strong evidence that counsel for CIT had not attempted to utilize an inflated default judgment award. As to the reasonableness of the sale price of the aircraft, it was undisputed that WCAL had previously agreed, on March 9, 1993, to sell the aircraft for $1.8 million and that the proposed Findings of Fact and Conclusions of Law submitted by WCAL and CIT to the bankruptcy court on July 1, 1993 stated that the market value of the Aircraft was approximately $1,800,000.

The Court noted that if Leitess had knowledge of the prior sale of the aircraft, he should have informed the Court before the entry of default judgment. The Court could have then entered a judgment that reflected the actual outstanding amount to be paid by Asterbadi. Nevertheless, the Court's decision did not turn on the issue of Leitess' knowledge. The Court found that drawing all inferences in the light most favorable to Asterbadi, the evidence could not have led a reasonable trier of fact to find by clear and convincing evidence that the Defendants committed a fraud on the Court through their omission of the facts regarding the sale of the aircraft prior to the entry of the default judgment. There was simply a lack of evidence supporting the existence of a "deliberately planned and carefully executed scheme to defraud" the Court, which a plaintiff must

show to prevail on a claim of fraud on the court.  *See Hazel-Atlas Glass Co.*, 322 U.S. at 245-46.

Based upon the lack of evidence to support Asterbadi's claim, the Magistrate Judge recommended that the Court award sanctions against Plaintiff's counsel in the amount of $181,897.41 as reimbursement for attorneys' fees and $14,747.26 in litigation related expenses.

## II.  Standard of Review

The authority of a magistrate Judge to issue orders and reports and recommendations is set forth in 28 U.S.C. § 637 and Rule 72, Fed. r. Civ. P.  District Courts review dispositive matters *de novo*, but review non-dispositive matters under the clearly erroneous or contrary to law standard.  *See* Fed. R. Civ. P. Rule 72(a), (b).

"[T]he issue of Rule 11 sanctions is a non-dispositive matter subject to clearly erroneous review under Rule 72(a), unless the nature of the sanction imposed, i.e., dismissal of the offending claim or defense, is itself dispositive of the claim or defense."  *See Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 305 (E.D. Va. 2004)(Ellis, J.)(citing *Segal v. L.C. Hohne Contractors, Inc.*, 303 F. Supp.2d 790, 794 (S.D. W.Va. 2004); *Weeks Stevedoring Co.*, 174 F.R.D. at 303-04 (S.D.N.Y. 1997); Moore's Federal Practice § 72.11[1][b] (3d ed. 2004)).  Here, the Magistrate's Report and Recommendation

was not dispositive of any claim or defense.  Accordingly, the Court will review the Report and Recommendation under the clearly erroneous or contrary to law standard.

### III.  Analysis

Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, the attorney or unrepresented party is certifying that to the best of that person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,--
>
> (1) [a document presented to the court] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . .
>
> (3) the allegations and other factual contentions have evidentiary support . . . .

If the Court determines that a party has failed to meet the requirements of Rule 11(b), it may impose sanctions "after notice and a reasonable opportunity to respond."  Fed R. Civ. P. 11(c).  A sanction imposed for violation of Rule 11 is "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated" and may be imposed "upon the attorneys, law firms, or parties" that have committed the violation or are responsible for the violation.  Fed. R. Civ. P. 11(c).

Plaintiff and his counsel argue that the Defendants have failed to comply with the safe harbor provisions of Rule 11. The sanctions motion Defendants filed with the Court was not identical to the motion previously served on Plaintiff. Defendants argue that the Rule 11 motion was simply updated to reflect the fact that the Court granted summary judgment for Defendants in the period between service on Plaintiff and filing with the Court. The Court notes that:

> [t]he failure of a party to comply with the safe-harbor requirements affects only the district court's authority to impose sanctions requested by a party under Rule 11(c)(1)(A). For example, failure to comply with the safe-harbor provisions would have no effect on the court's authority to sua sponte impose sanctions under Rule 11(c)(1)(B), to award costs pursuant to 28 U.S.C.A. § 1927, or to impose sanctions within its inherent power.

*Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004)(citing *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993)).  In any event, the Court need not address this procedural issue because it finds that sanctions are inappropriate for substantive reasons.

The basic requirement of Rule 11 is that an unrepresented party or a represented party's attorneys conduct a prefiling investigation of law and fact which is objectively reasonable under the circumstances. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir.

9

1987).  In *Brubaker*, the Fourth Circuit provided standards by which the reasonableness of both the prefiling factual investigation and the prefiling legal investigation can be judged.  943 F.2d at 1373.  The *Brubaker* court stated that "[t]o be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint." *Id.*  A party violates the requirement that pleadings be well-grounded in law if the complaint "has absolutely no chance of success under the existing precedent."  *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)(quoting *Cleveland Demolition Co.*, 827 F.2d at 988).

　　　"Blind reliance on the client is seldom a sufficient inquiry."  *In Re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990)(citing *Southern Leasing Parners Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986).  Nevertheless, Plaintiff's attorneys' prefiling investigation was reasonable because there existed both a factual and legal basis for Plaintiff's Complaint.  It is undisputed that Leitess failed to inform the Court that the aircraft had been sold prior to the entry of the default judgment.  Plaintiff's suit was grounded upon an argument that Leitess's failure to inform the Court was akin to the subornation of perjury cited as an example of fraud on the court in *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982).

10

This Court implicitly found that Leitess' failure to inform the Court of the sale was not akin to subornation of perjury and, accordingly, applied the five-factor test for fraud on the court as set out in *Great Coastal*. 675 f.2d at 1358. Plaintiff's claim was ultimately unsuccessful.

Nevertheless, Plaintiff's attorneys were entitled, despite the contradictory statements of their client, to make the argument that Leitess intentionally withheld information from the Court in order to obtain an inflated default judgment. "In evaluating the reasonableness of the investigation, it must be remembered that Rule 11 'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* (citing Fed. R. Civ. P. 11, notes of advisory committee on 1983 amendment). *Great Coastal* provided the legal basis for Plaintiff's Complaint and the undisputed fact that Leitess failed to inform the Court of the sale of the aircraft prior to the entry of the default judgment provided the factual basis. Plaintiff's claim failed because he was unable to convince the Court that if Leitess knew of the sale, his actions were sufficiently similar to subornation of perjury that the *Great Coastal* test was unnecessary. Though Plaintiff did not prevail, Plaintiff's attorneys had a good faith basis for a claim of fraud on the Court given Leitess' failure to inform the Court of the sale of the aircraft prior to the entry of the default judgment.

Though the Court found the similarities between Leitess' actions and the subornation of perjury discussed in *Great Coastal* to be insufficient for Plaintiff to prevail, Plaintiff's claim was not completely without factual or legal foundation. Plaintiff's counsel acted reasonably. Accordingly, Rule 11 sanctions are inappropriate.

### IV. Conclusion

For the following reasons, the Court will grant Plaintiff's Motion, will reject the Magistrate's Report and Recommendation, and will not impose Rule 11 sanctions. An appropriate Order will issue.

August 22, 2005                              /s/
Alexandria, Virginia            James C. Cacheris
                                UNITED STATES DISTRICT COURT JUDGE